NO. 13-55118

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ANTHONY FERRIERA; *et al.*,
*on behalf of themselves and all persons similarly situated*,
*Plaintiffs-Appellees*,

v.

PADRAIGIN BROWNE,
*Objector-Appellant*,

v.

GROUPON, INC.; *et al.*,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the Southern District of California, No. 3:11-md-02238-DMS-RBB

**Reply Brief of Appellant Padraigin Browne**

Nathan A. Wersal
CLASS JUSTICE PLLC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
763-257-9219
*Attorney for Objector–Appellant Padraigin Browne*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ........................................................................ ii

Argument ...................................................................................................... 1

I.     Appellees Oversimplify and Misstate the Relevant Standards of Review ............ 1

II.    The District Court Abused Its Discretion by Approving the Amended
       Settlement Agreement Without Providing the Notice or Fairness
       Hearing Required by Rule 23(e) .............................................................. 3

       A.   The amended settlement agreement was a material change in the
            settlement terms, and necessarily had an adverse effect on some class
            members. ...................................................................................... 4

       B.   The district court's failure to issue notice or hold a fairness hearing
            on the second, amended settlement cannot be excused by reference
            to the procedures for the first, rejected settlement or otherwise. .................. 7

       C.   The district court's failure to issue notice or hold a fairness hearing
            materially prejudiced the rights of Browne and the absent class. ................ 10

III.   The District Court Erred by Failing to Apply the Provisions of the Class
       Action Fairness Act, 28 U.S.C. § 1712, to this coupon settlement. ..................... 11

       A.   The "Settlement Vouchers" provided by the settlement must be
            treated as coupons under CAFA. ...................................................... 12

       B.   The "common fund" does not shield the fee award from CAFA
            because under this Court's ruling in *HP Inkjet*, the fund itself is
            "attributable to" the award of coupons. ............................................. 14

IV.    The District Court Abused Its Discretion by Approving a Settlement
       Containing a "Second Settlement Fund" That Would Distribute Class
       Funds by Criteria Unrelated to Class Membership or the Settled Claims ........ 17

CONCLUSION ............................................................................................. 21

CERTIFICATE OF COMPLIANCE ........................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 12

*Casey v. Albertson's Inc.*, 362 F.3d 1254 (9th Cir. 2004) ......................................................... 3

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) .................................... 5, 7

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ............................................................. 22

*Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3rd Cir. 1996), *aff'd sub nom*
    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................ 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................... 5, 7, 8

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...................................................................... 17, 18

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .............................. 8

*In re Equity Funding Corp. of America Sec. Litig.*, 603 F.2d 1353 (9th Cir.
    1979) ............................................................................................................................ 9

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) ....................................... passim

*In re Integra Resources, Inc.*, 252 F.3d 1089 (10th Cir. 2001) .............................................. 10

*In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418 (N.D. Cal. 2009) ....................... 7

*In re The NVIDIA GPU Litig.*, No. 11-15186, 2013 WL 4734494 (9th
    Cir. Sept. 4, 2013) (unpublished) .................................................................................. 9

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ........................................................... 11

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ................................................................. 2, 3

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615 (9th
    Cir. 1982) ................................................................................................................. 5, 12

*Shaffer v. Continental Cas. Co.*, No. 08-56124, 2010 WL 106816 (9th Cir. Jan. 12, 2010) (unpublished) ................................................................ 9

*Synfuel Techs. v. DHL Express (USA)*, 463 F.3d 646 (7th Cir. 2006)............................ 15

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ................................. 3

*United States v. Clifford Matley Family Trust*, 354 F.3d 1154 (9th Cir. 2004) ...................... 3

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010)............................. 2

*Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169 (9th Cir. 1999) ................................. 16

*Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999) .................................. 13

## Statutes

28 U.S.C. § 1712 ...............................................................................1, 3, 14, 20

## Rules

Fed. R. Civ. P. 23(a)(4)............................................................................. 3

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................... 10

Fed. R. Civ. P. 23(e) ...........................................................................passim

# Argument

This appeal presents several independent reasons for the Court to vacate and remand. *First*, it was error for the district court to deny Browne and the other class members the protections of Rule 23(e) and approve the amended settlement without issuing notice or holding a fairness hearing. *Second*, it was error for the district court to fail to apply the Class Action Fairness Act, 28 U.S.C. § 1712 ("CAFA") to the settlement and fee award, especially in light of intervening authority from this Court. *Third*, it was an abuse of discretion, as a matter of law, for the district court to approve a distribution of class funds which favors those class members who are willing to do continued business with Groupon over those class members who, like Browne, are not. Appellees defend the decisions of the district court on each front. For the reasons explained herein, the arguments presented by Appellees in defense of the district court's decision are flawed, and the settlement approval and fee award must be vacated.

## I.     Appellees Oversimplify and Misstate the Relevant Standards of Review

Both groups of Appellees consistently invoke only a single standard of review in their briefs—the abuse of discretion standard, which is deferential and places a "heavy burden" on Browne. Pl. Br. at 11–12; Def. Br. at 14, 16.[1] To be sure, the

---

[1] "Pl. Br." refers to the Answering Brief of Plaintiffs-Appellees. "Def. Br." refers to the Answering Brief of Defendants-Appellees. "Opening Br." refers to Appellant

"overall standard of review" applicable to appeals from class actions is indeed the abuse of discretion standard. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010); *see also, e.g.*, *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013); *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). But while it is important to identify the "overall" standard, it is equally important to recognize the particular issues within this appeal which mandate a broader, non-deferential review. By failing to do so, Appellees oversimplify—and ultimately misstate—the applicable standards of review.

As Browne noted in her opening brief, her appeal raises questions of law. Opening Br. at 2–3. This Court reviews questions of law *de novo*, and considers an error of law to be a *per se* abuse of discretion. "[W]e accord the decisions of district courts no deference when reviewing their determinations of questions of law. Further, this court has oft repeated that an error of law *is* an abuse of discretion." *Yokoyama*, 594 F.3d at 1091; *see also Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004). A failure to apply the Class Action Fairness Act, 28 U.S.C. § 1712 ("CAFA") (Opening Br. at 13, 21–27) would be just such an error of law. Whether the district court erred by approving the amended settlement without issuing class notice (Opening Br. at 13, 15–21) is a question of law that is reviewed *de novo. Molski*, 318 F.3d at 953; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993). Similarly, questions of law

---

Browne's Opening Brief. "ER" refers to the Excerpts of Record Submitted by Appellant Browne, where appropriate.

2

regarding the interpretation of the Federal Rules of Civil Procedure—including settlement approval procedures and substantive fairness under Rule 23(e) (Opening Br. at 13–14, 15–21, 28, 32–33) and the adequacy of representation under Rule 23(a)(4) (Opening Br. at 29)—are reviewed *de novo* as well. *United States v. Clifford Matley Family Trust*, 354 F.3d 1154, 1159 n.4 (9th Cir. 2004). While the deferential standard of review advocated by Appellees is flattering to their arguments, it is incorrect where Browne raises questions of law.

## II. The District Court Abused Its Discretion by Approving the Amended Settlement Agreement Without Providing the Notice or Fairness Hearing Required by Rule 23(e)

Rule 23(e) requires a district court to take certain concrete measures before approving a class action settlement, including that it "must direct notice in a reasonable manner to all class members who would be bound" by a proposed class action settlement, and "may approve it only after a hearing." Fed. R. Civ. P. 23(e)(1), (2). The district court failed to do either. Appellees defend the district court's failure to apply the notice and hearing requirements of Rule 23(e) to this settlement by arguing that: (1) the alterations to the amended settlement agreement were *de minimis* or necessarily beneficial; (2) the notice and hearing for the first, rejected settlement sufficed for approval of the second, amended settlement; and (3) Browne's rights were not prejudiced by the court's failure to issue notice or hold a fairness hearing. Each of these arguments is incorrect.

**A.    The amended settlement agreement was a material change in the settlement terms, and necessarily had an adverse effect on some class members.**

Appellees argue that the revision to the amended settlement agreement—the elimination of any *cy pres* relief—was a *de minimis* change unworthy of renewed notice and a new hearing, and that the modifications were necessarily beneficial to the class because they "increas[ed] the common fund"[2] or made "more money available for distribution to class members." Pl. Br. at 1, 14; Def. Br. at 14, 19–21. With regard to the former contention, Appellees fail to cite a single case where an alteration in the distribution of settlement proceeds has been held insufficient to invoke the Rule 23(e) requirements of notice and a hearing. Indeed, this Circuit has long held that "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citing *Officers for Justice*, 688 F.2d at 628). This settlement is a complex system, with multiple stages and funds. An alteration in the distribution plan for settlement proceeds necessarily affects the overall gestalt of the settlement and the evaluation of its fairness—and, in turn, creates a new reason to "alert those with adverse viewpoints

---

[2] Plaintiff-Appellees contradict themselves by arguing that the modified settlement had the effect of "increasing the common fund" by eliminating the *cy pres* component. Pl. Br. at 1. Plaintiff-Appellees have otherwise consistently referred to the total $8.5 million cash fund as the "common fund," in order to justify their fee award. *E.g.*, Pl. Br. at 17; ER 151. That figure has not been affected by the elimination of the *cy pres* award, since it includes the total cash fund—regardless of whether the fund would be used for distribution to the attorneys, to the settlement administrators, or for *cy pres*.

to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Appellees' latter contention—that the settlement amendment was necessarily beneficial to the class—is easily disproved. Take, for example, Browne, who has strenuously argued at each stage of the proceedings that the Second Settlement Fund will not benefit her. Because Browne has not done business with Groupon subsequent to the Class Period, and does not intend to do any further business with Groupon in the future, she is ineligible to receive any funds whatsoever from the Second Settlement Fund. Browne is assuredly not the only class member in this position, given that there are estimated to be more than 14 million discrete class members, that Groupon is claimed to have violated consumer protection laws, and that Groupon is only one of several competing "daily deal" websites. ER 199, 204, 214.

While Browne opposed the *cy pres* provisions in the initial settlement, consider a hypothetical class member who received the initial settlement notice, who upon investigation discovered she was similarly ineligible for the Second Settlement Fund, but who believed that the *cy pres* provisions were beneficial and mitigated her concerns about the settlement as a whole. While a proper *cy pres* distribution[3] only benefits class

---

[3] The *cy pres* distribution contemplated by the first, rejected settlement was improper because it would have distributed funds to charities unrelated to the claims asserted by the class, and because it would have done so despite the feasibility of making direct distributions to class members. ER 90–92.

5

members indirectly, it at least does so equally. Based upon the initial notice, this hypothetical class member may not have opted-out, objected, or participated in the fairness hearing. The opt-out deadline had passed by the time of the settling parties' formulation of the revised settlement agreement, and this hypothetical class member was now "locked in" to the settlement. The elimination of her share of the indirect *cy pres* benefits and the corresponding enlargement of the Second Settlement Fund may have presented a compelling reason for this hypothetical class member to "come forward and be heard"—that is, if she had been informed of the change. *Churchill Vill., LLC*, 361 F.3d at 575.

What Appellees truly mean, but do not say, is that the increase in the Second Settlement Fund will benefit *some* class members—but not all, and not equally. Specifically, the amendment benefits only those class members who are willing to do repeat business with Groupon. This Court has warned that "disparate treatment between class members" is a sign that a settlement may be unfair. *Hanlon*, 150 F.3d at 1027. The standard for fairness under Rule 23(e) is "the value of [the] benefits to the class"—i.e., value to the class as a whole, not value to some lesser part of the class. *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009), *quoted with approval in In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011). Those class members excluded from the Second Settlement Fund, including Browne, should have been given notice of the amended settlement agreement and an opportunity to be heard.

**B.    The district court's failure to issue notice or hold a fairness hearing on the second, amended settlement cannot be excused by reference to the procedures for the first, rejected settlement or otherwise.**

Appellees attempt to excuse the district court's failure to issue notice or hold a fairness hearing for the amended settlement on varied grounds, but each of these arguments is flawed. Plaintiff-Appellees take the position that the class received notice of the "exact terms that were approved," and both groups of Appellees agree that the existing notice from the first, rejected settlement was sufficient to support approval of the second, amended settlement. Pl. Br. at 14; Def. Br. at 21. Here, Plaintiff-Appellees stretch the word "exact" far beyond its conventional meaning. While all of the final language may have been present in the initial, rejected settlement agreement, the deletion of the *cy pres* components changed the agreement as a whole, and as argued above, it is "the settlement taken as a whole" that is the crucial subject of inquiry, not only to the court but to the absent class members. *Hanlon*, 150 F.3d at 1026.

Defendant-Appellees cite a handful of cases where courts appear to have declined to require renewed notice or a fairness hearing after the amendment or modification of a settlement. Def. Br. at 22–24. Upon closer inspection, however, each of the cited cases is distinguishable. *In re Equity Funding Corp. of America Sec. Litig.*, a settlement of a multidistrict securities dispute, presented a situation unlike this one, where certain settlement terms were not agreed upon by the parties. In that case, the initial notice fully informed the absent class members that these terms were

unresolved. 603 F.2d 1353, 1361 (9th Cir. 1979). The notice "stated that the MDL judge would be presented with, and would decide, the question…. Thus, the appellants were made aware that the offset and valuation questions were to be resolved at the Settlement Hearing." *Id.* If anything, this case actually supports Browne's argument that the absent class members should have been given notice of the changed terms. Defendant-Appellees also lean heavily on three cases where the settlement modifications unambiguously expanded the rights of the class: this Court's unpublished decisions in *Shaffer v. Continental Cas. Co.*[4] and *In re The NVIDIA GPU Litig.*,[5] as well as the Tenth Circuit's decision in *In re Integra Resources, Inc.*[6] The amendments at issue in *Shaffer* and *NVIDIA* narrowed the release of claims, while the amendment in *Integra Resources* provided opt-out rights.[7] Here, in contrast, the amendment at issue shifts the distribution of settlement proceeds. There is a vast qualitative difference between changes that unambiguously expand the rights of class members and a change that modifies (but does not increase) the distribution of funds—especially one that benefits some class members but excludes others.

Finally, Plaintiff-Appellees note that Rule 23(e) required the parties and the district court to give the absent class members "the best notice that is practicable

---

[4] No. 08-56124, 2010 WL 106816 (9th Cir. Jan. 12, 2010) (unpublished).
[5] No. 11-15186, 2013 WL 4734494 (9th Cir. Sept. 4, 2013) (unpublished).
[6] 252 F.3d 1089, 1099 (10th Cir. 2001).
[7] Another modification was challenged in *NVIDIA* as well, but on factually incorrect grounds. Certain objectors argued that Amendment 2 changed the class definition and waived additional claims, but this Court determined that this was simply incorrect.

under the circumstances." Pl. Br. at 14 (quoting Fed. R. Civ. P. 23(c)(2)(B)). But they fail to explain how the "circumstances" differed between the initial and amended settlements. The elements of the notice given for the first settlement agreement, which combined to constitute the "best … practicable" according to the settling parties were extensive, including 14,183,620 e-mails to potential class members, *another* 14,183,620 supplemental e-mails "notifying potential class members of updated dates and deadlines set by the Court and new Commonly Asked Questions and responses on the settlement website," and extensive media reports by major outlets including the L.A. Times and ABC News. ER 80, 214, 216, 223. Appellees fail to argue that sending additional e-mail notice of the new settlement agreement would have been prohibitively expensive or logistically difficult, and thus concede Browne's argument on that front. Considering Appellees' demonstrated ability and willingness to send multiple e-mail notices regarding the first, rejected settlement agreement— even for such minutia as "new Commonly Asked Questions"—it is clear that the "circumstances" surround the amended settlement should have allowed for some form of notice to the absent class. The repeated e-mail notices for the first settlement agreement may have even lulled some class members into believing that class counsel would alert them to any substantive changes. The absence of *any* notice of the amended agreement falls far from meeting the standard of "sufficient detail to alert those with adverse viewpoints." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

**C.     The district court's failure to issue notice or hold a fairness hearing materially prejudiced the rights of Browne and the absent class.**

Appellees argue that, in any case, the district court's failure to issue notice or hold a fairness hearing did not result in substantive prejudice and was harmless error, since objections to the remaining components of the amended settlement had already been made at the fairness hearing on the first, rejected settlement. Pl. Br. at 1, 15–16; Def. Br. at 21–22, 24–25. These arguments fail to put sufficient, if any, weight on this Court's recognition that "the protection afforded by subsection (e) is primarily procedural in nature." *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 623–24 (9th Cir. 1982). Courts are "not free to amend a rule outside the process Congress ordered," because the rules enabling process itself was "properly tuned to the instruction that rules of procedure 'shall not abridge … any substantive right.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–21 (1997) (quoting 28 U.S.C. § 2072(b)). Here, in context, the failure to provide the procedural rights and protections of Rule 23(e) is equivalent to a substantive harm, because for absent class members these are the only protections available. And in fact, the amendment implicates class members' substantive rights, because "it makes important judgments on how recovery is to be allocated among different kinds of plaintiffs, decisions that necessarily favor some claimants over others." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3rd Cir. 1996), *aff'd sub nom Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

Furthermore, in arguing that Browne would not be prejudiced by the failure of the court to allow new objections, Appellees engage in the fallacy of treating all objections as equivalent and interchangeable. This Court has recognized that objectors can make "substantial" contributions to class action settlement proceedings "by providing an adversarial context." *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999). If a given objection contributes to these proceedings, then Browne, as a class member, benefits from it. But not all objections are equal in their contribution to the adversarial process. Both Plaintiff-Appellees and Defendant-Appellees have elsewhere argued that certain "professional objectors" do not contribute meaningfully to the process, so it is already established that there are some "good" objections, and some "bad." ER 204, 223. A renewed notice and opportunity to object may have attracted new objections that better contributed to the adversarial process, and thereby benefited Browne and the absent class members. By failing to issue notice or hold a fairness hearing for the revised settlement, the district court deprived Browne and the entire class of these benefits. The district court's failure to issue notice or hold a fairness hearing was far from "harmless."

## III.   The District Court Erred by Failing to Apply the Provisions of the Class Action Fairness Act, 28 U.S.C. § 1712, to this coupon settlement.

Where a class action settlement provides for the award of coupons to class members, the district court must limit the attorneys' fee award based on the value to the class members of the "coupons that are redeemed." 28 U.S.C. § 1712(a)

("CAFA"). The district court failed to do so. During the pendency of this appeal, this Court has defined a "coupon settlement" as "where defendants pay aggrieved class members in coupons *or vouchers* but pay class counsel in cash." *In re HP Inkjet Printer Litig.*, 715 F.3d 1173, 1177 (9th Cir. 2013) (emphasis added). Appellees defend the district court's failure to apply CAFA to this coupon settlement by arguing that (1) the settlement does not actually involve "coupons"; and (2) CAFA is inapplicable because the fee award is based upon a cash common fund. Pl. Br. at 2, 12, 17–18; Def. Br. at 15, 26–27. These arguments are incorrect.

## A.     The "Settlement Vouchers" provided by the settlement must be treated as coupons under CAFA.

Appellees argue that the settlement "does not involve coupons" at all. Pl. Br. at 2, 17; Def. Br. at 15, 26–27. As a preliminary matter, although Appellees seek to minimize this Court's statement in *HP Inkjet* that a "coupon settlement" is one which pays class members "in coupons or vouchers" as being mere semantics, Appellees fail to mention that a sister Circuit follows a similar rule. The Seventh Circuit defines a "coupon" as "a discount on a proposed purchase." *Synfuel Techs. v. DHL Express (USA)*, 463 F.3d 646, 654 (7th Cir. 2006). Like this Court's recognition that a "coupon" is not limited to things explicitly labeled "coupons," the *Synfuel* definition of "coupon" is based on function rather than semantics. The "Settlement Vouchers" in this case fit the *Synfuel* definition as well. Groupon markets "daily deal" vouchers which are targeted towards specific activities or services, including "restaurants, spas,

massages, theaters, hotels, and a whole lot more." ER 108. Because the "daily deal" includes a promotional value on top of the paid price (at least for a limited time), consumers generally pay less for those vouchers than the retail price of the activities or services the vouchers are targeted towards. ER 209.

Therefore, a "Settlement Voucher" that restores only the paid price to the consumer—typically half of the total paid-plus-promotional value—and limits redemption to the specific activity provider, service provider, or retail outlet connected to the original "daily deal" purchase, will often function as a discount coupon. In particular, every class member who purchased a "daily deal" voucher meant to be used for a specific fixed-price activity or service (like a spa package, a massage, a theater ticket, or a hotel reservation) will need to spend money out-of-pocket on top of the Settlement Voucher in order to redeem it and gain the benefit of class counsel's bargain. Appellees, who fail to cite to or discuss *Synfuel*, fail to provide any reason why this Court should disregard Seventh Circuit precedent and create a circuit split. *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1184 (9th Cir. 1999) (noting that the Court creates a circuit split "only after the most painstaking inquiry").

Defendant-Appellees further argue that, because the Settlement Vouchers correspond to Groupon Vouchers which were the subject of the Plaintiffs' claims, the Settlement Vouchers merely represent a compromise regarding the expiration date of previously-purchased Groupon Vouchers, and not a discount for future purchases. However, Defendant-Appellees provide no justification in law or fact for this theory.

The settlement does *not* extend the expiration date of existing Groupon Vouchers; rather, it issues new Settlement Vouchers, each with their own new expiration date. *E.g.*, ER 37, 45–46. This is not a mere semantic distinction. Merchant Partners had to be notified of the very existence of Settlement Vouchers, ER 46, and if the settling parties had wanted to extend the expiration date of existing Groupon Vouchers it could just have easily been achieved through injunctive relief.

More fundamentally, Defendant-Appellees err by focusing on the class members' original purchases of the Groupon Voucher(s) that placed them within the class definition. The relevant issue is instead whether the settlement vouchers will provide discounts on future purchases, when and if they are redeemed. For the reasons stated above, they will. There is no principled reason why a settlement where coupons are part of the relief should be excluded from CAFA simply because the lawsuit was initiated over issues relating to coupons. The basis for the claims does not change the qualitative nature of the relief, nor does it change the application of the mandatory statutory language of CAFA.

**B.     The "common fund" does not shield the fee award from CAFA because under this Court's ruling in *HP Inkjet*, the fund itself is "attributable to" the award of coupons.**

Plaintiff-Appellees note that the settlement agreement is "creatively structured." Pl. Br. at 2. This is an understatement. The very existence of the $8.5 million "common fund" appears designed to justify attorneys' fees and avoid the

application of CAFA. In a traditional "common fund," the fund is distributed directly to the class as a benefit, in proportion to the past harms suffered by each class member. Yet here, despite the $8.5 million "common fund," cash is simply not an option for many class members, including Browne. Cash is only available if the relevant merchants are out of business, refuse to honor the Settlement Vouchers, or if the class member agrees to do future business with Groupon. *E.g.*, ER 45–46. As such, the suggestion in *HP Inkjet*, cited by Plaintiff-Appellees, that "tether[ing] the value of an attorneys' fees award to the value of the class recovery" is "fairly effortless" where "both the class and its attorneys are paid in cash" is inapplicable here. Pl. Br. at 18; *HP Inkjet*, 716 F.3d at 1178 (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). Indeed, by citing *Hensley v. Eckerhart* in support of that suggestion, this Court implicitly recognized that "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. Obviously, a hypothetical "common fund" settlement where 75% of the fund was consumed by administration costs and the remaining 25% was claimed by class counsel as fees would not represent a high degree of success. Put simply, not all cash identified in a settlement necessarily constitutes a benefit to the class.

Plaintiff-Appellees strenuously argue that the district court's calculation of the fee award as a percentage of the $8.5 million "common fund"—rather than as a percentage of the Settlement Vouchers' assumed value—should prevent the

application of CAFA. Pl. Br. at 12, 17–18. But careful investigation of this common fund reveals that it is inextricably linked to the award of Settlement Voucher coupons.

The "First Settlement Fund" instituted by the settlement is explicitly intended as a backstop or fail-safe for the award of Settlement Voucher coupons—it is intended to provide value to those coupons if the relevant merchant is out of business or refuses to honor it. *E.g.*, ER 156. Because the merchants are only asked to *voluntarily* honor the coupons and can refuse to honor them at will, without the "First Settlement Fund" as a fail-safe, the coupons would be worth less than the paper on which they were printed. ER 45–46.

Not only is the First Settlement Fund dedicated to supporting the award of coupons, so is the entire "common fund." Defendant-Appellees note that "[t]he entire Settlement Fund (less attorneys fees, incentive awards and expenses) is available to pay these refunds to class members." Def. Br. at 8. Indeed, at the fairness hearing, Plaintiff-Appellees represented a belief that "there won't be any [money] left" after the First Settlement Fund. ER 157. While Browne maintains her position that in practice the vast majority of the settlement funds will flow to the Second Settlement Fund rather than to class members as compensation for otherwise-worthless coupons, it is clear—and Appellees have admitted—that the common fund is linked to the award of Settlement Voucher coupons.

In *HP Inkjet*, this Court held that a fee award is "attributable to" an award of coupons wherever the award of coupons is a "condition precedent" to the fee award,

or where the fee award is a "consequence" of the award of coupons. *HP Inkjet*, 716 F.3d at 1181. In this case, Appellees have merely added a premise to the logical proposition: The fee award is calculated as a percentage of the common fund, and the common fund is a necessary "consequence" of the award of coupons. The inescapable conclusion of this syllogism is that the fee award is a consequence of the award of coupons, and thus subject to CAFA.

This result is especially necessary since many class members, like Browne, will *only* receive Settlement Voucher coupons, and no other form of relief—making it impossible for the fee award to be universally attributable to anything but the coupons. And insofar as the common fund is dedicated to supporting the award of coupons, but *only where necessary*, it does not *itself* represent a predictable measure of the "value to class members" that CAFA mandates a fee award be based upon. 28 U.S.C. § 1712(a). While the "common fund" here appears reasonable, its purpose is primarily and inextricably tied to the coupon relief afforded by the settlement. The bright-line test established by this Court in *HP Inkjet* therefore mandates that the fee award be based upon the value to class member of the coupons that are redeemed.

## IV. The District Court Abused Its Discretion by Approving a Settlement Containing a "Second Settlement Fund" That Would Distribute Class Funds by Criteria Unrelated to Class Membership or the Settled Claims

The "Second Settlement Fund" created by the settlement represents an unequal allocation of the recovery among the class, favoring those class members who are

willing to do business with Groupon in the future over those who are not. Opening Br. at 27–30. It also serves as a marketing tool for Groupon in effect, allowing Groupon to issue refunds mandated by the Second Settlement Fund as though they were a fulfillment of the "Groupon Promise," which appears to a casual observer to promise such refunds in the first place. Opening Br. at 30–32. These provisions failed to satisfy the mandate of Rule 23(e) that a settlement be fair, reasonable, and adequate as a matter of law.

Defendant-Appellees advance several arguments in defense of the district court's approval of the Second Settlement Fund terms: (1) that they constituted a benefit to the class; (2) that they did not detract from the funds available for refunds relating to Settlement Vouchers; and (3) that Groupon's ability to reimburse itself from the Second Settlement Fund for refunds it provides directly to class members was merely a convenience to the class members. Def. Br. at 27–29. These arguments are incorrect.

*First*, the Second Settlement Fund is not a benefit to the class. It is not a class benefit in the sense of being compensation for the harm suffered by the class or for the released claims; it is instead merely a prospective benefit for future purchases, which fall outside of the class definition. And it is not a class benefit in the sense of benefitting the class as a whole; the Second Settlement Fund benefits only a certain subset of class members who, unlike Browne, are willing to do business with Groupon in the future.

*Second*, the assertion that the Second Settlement Fund does not detract from the relief available to class members who are ineligible for it, like Browne, is not supported by the record. The class originally asserted claims for damages, including for the relevant statutory damages, and there is no basis for asserting that Browne can be made whole simply by receipt of a Settlement Voucher in the amount she originally paid for her Groupon Vouchers. If excess funds exist beyond the First Settlement Fund, Browne and every class member should have a claim to those funds, up to the amount of the damages claims asserted on their behalf.

*Third*, the involvement of Groupon in the process of initiating and reimbursing itself for refunds is not a mere convenience, but instead plays an important role in determining the value of the relief. In the *cy pres* context, this Court has previously questioned the role that a defendant corporation proposed to take in distributing class relief where, as here, significant details were left unclear. *Dennis v. Kellogg Co.*, 697 F.3d 858, 867–68 (9th Cir. 2012) (questioning whether, given that Kellogg already donated food and money to charities each year, Kellogg would use previously budgeted funds to offset its settlement obligations). Here, it remains unclear to what extent Groupon has now or previously budgeted funds for the purpose of providing refunds to consumers under the banner of the "Groupon Promise." Even if the "Groupon Promise" terms do not *require* refunds, the practice, like donations to charity, would help create a positive image for the company. Refunds therefore may have been a regular practice even if they were not required or universal; the record does not speak

19

to this possibility with any certainty. If so, the Second Settlement Fund may function at least in part as an offset of Groupon's previously-budgeted policy. In such a case, Groupon's ability to initiate and draw reimbursements for refunds from the Second Settlement Fund would constitute an ability to reimburse itself for its previously-budgeted or ongoing business expenses.

## CONCLUSION

Remand is required for several independent reasons: the district court failed to issue notice and hold a fairness hearing pursuant to Rule 23(e), failed to apply CAFA, and approved a settlement distribution which privileged class members willing to do repeat business with Groupon over the entire class of past purchasers. This Court should reverse the settlement approval and fee award, and remand with instructions to issue notice and hold a fairness hearing pursuant to Rule 23(e). This Court should further instruct the district court to apply the fee limitations of the Class Action Fairness Act and to base any award on the value of the coupons that are actually redeemed (or, in the case of fail-safe coupon payments drawn from the First Settlement Fund where the merchant is out of business or refuses to honor the coupons, the amount of payments actually made to class members). The Court should further make clear that a settlement distribution which provides extra benefits only to those class members willing to do repeat business with the Defendant is not tenable under Rule 23(e) as a matter of law.


DATED: October 25, 2013

/s/ Nathan A. Wersal
Nathan A. Wersal
CLASS JUSTICE PLLC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
763-257-9219
*Attorney for Objector–Appellant Padraigin Browne*

## SUPPLEMENTAL STATEMENT OF RELATED CASES
## PURSUANT TO NINTH CIRCUIT RULE 28-2.6

Appellant's initial statement of related cases identified case No. 13-55120, the appeal of objectors Chris Brown and Maggie Strohlein from the final judgment in this case. On August 14, 2013, Brown and Strohlein's appeal was dismissed for failure to prosecute pursuant to Ninth Circuit Rule 42-1.

The appeal of objector Sean Hull from the final judgment in this case, No. 13-55128, is related because it raises the same or closely-related issues. Appellant Browne is unaware of any other related cases pending in this Court.

DATED: October 25, 2013

/s/ Nathan A. Wersal
Nathan A. Wersal
CLASS JUSTICE PLLC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
763-257-9219
*Attorney for Objector–Appellant Padraigin Browne*

## CERTIFICATE OF COMPLIANCE
## WITH FED. R. APP. 32(a)(7)(C) AND CIRCUIT RULE 32-1

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,325 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Garamond font.


DATED: October 25, 2013

/s/ Nathan A. Wersal
Nathan A. Wersal
CLASS JUSTICE PLLC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
763-257-9219
*Attorney for Objector–Appellant Padraigin Browne*

| 9th Circuit Case Number(s) | 13-55118 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)                          .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)   Oct 25, 2013   .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

See attached service list.

Signature (use "s/" format)   s/ Nathan A. Wersal

Return to Service List Page

**Service List for Case:** 13-55118 Padraigin Browne et al v. Groupon Inc. et al

**CAUTION:** If the word *Active* is in the **ECF Filing Status** column, then your electronic filing will constitute service to the party.
If *Not Registered*, *Exempt*, *Exemption Expired*, *Pending*, *Rejected*, or *Suspended* appears in the **ECF Filing Status** column (or it is blank), then you must service this party by US Mail.

| Contact Info | Case Number/s | Service Preference | ECF Filing Status |
|---|---|---|---|
| Jarod M. Bona<br>DLA PIPER LLP (US)<br>Suite 1700<br>401 B Street<br>San Diego, CA 92101-4297<br>Email: jarod.bona@dlapiper.com | 13-55118 | Email | Active |
| Mark Anthony Bulgarelli<br>PROGRESSIVE LAW GROUP, LLC<br>Suite 2255<br>1 North LaSalle Street<br>Chicago, IL 60602<br>Email: markb@progressivelaw.com | 13-55118 | Email | Active |
| Jonathan Stephen Burns<br>Wites & Kapetan PA<br>440 N. Federal Highway<br>Lighthouse Ppont, FL 33064 | 13-55118 | US Mail | |
| Christopher R. Carney<br>Carney Gillespie Isitt PLLP<br>100 West Harrison St.<br>Suite N440<br>Seattle, WA 98119<br>Email: christopher.carney@cgilaw.com | 13-55118 | Email | Active |
| Dana E. Deering<br>Parry Deering Futscher & Sparks PSC<br>411 Garrard St.<br>p.O. Box 2618<br>Covington, KY 41012-2618 | 13-55118 | US Mail | |
| Christopher M. Ellis<br>Bolen Robinson & Ellis<br>2nd Floor<br>202 South Frankin St.<br>2nd Floor<br>Decatur, IL 62523<br>Email: cellis@brelaw.com | 13-55118 | Email | Active |
| David A. Futscher<br>Parry Deering Futscher & Sparks PSC<br>411 Garrard St.<br>p.O. Box 2618<br>Covington, KY 41012-2618<br>Email: dfutscher@pdfslaw.com | 13-55118 | Email | Active |
| Sean Paul Gillespie<br>Carney Gillespie Isitt PLLP<br>100 West Harrison St. | 13-55118 | Email | Active |

| | | | |
|---|---|---|---|
| Suite N440<br>Seattle, WA 98119<br>Email: sean.gillespie@cgilaw.com | | | |
| Kevin Kamuf Green<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>Suite 1900<br>655 West Broadway<br>San Diego, CA 92101-8498<br>Email: kgreen@rgrdlaw.com | 13-55118 | Email | Active |
| Clayton Dean Halunen<br>Halulen & Associates<br>1650 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402<br>Email: halunen@halunenlaw.com | 13-55118 | Email | Active |
| Kenneth Hinton<br>2200 Wilson Blvd.<br>Suite 102-004<br>Arlington, VA 22201 | 13-55118 | US Mail | |
| Robert Brent Irby<br>McCallum Hoagulund Cook & Irby LLP<br>Suite 201<br>905 Montgomery Highway<br>Vestavia Hills, AL 35215<br>Email: birby@mhcilaw.com | 13-55118 | Email | Active |
| Kenan Isitt<br>Carney Gillespie Isitt PLLP<br>100 West Harrison St.<br>Suite N440<br>Seattle, WA 98119<br>Email: kenan.isitt@cgilaw.com | 13-55118 | Email | Active |
| Matthew J. Iverson<br>DLA Piper LLP<br>33 Arch St.<br>26th Floor<br>Boston, MA 02110 | 13-55118 | US Mail | |
| Rachel L. Jensen<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>Suite 1900<br>655 West Broadway<br>San Diego, CA 92101-8498<br>Email: rachelj@rgrdlaw.com | 13-55118 | Email | Active |
| E.G. Johnson<br>2929 Schoolhouse Circle<br>Silver Spring, MD 20902 | 13-55118 | US Mail | |
| Michael A. Johnson<br>Michael A. Johnson & Associates<br>415 North LaSalle St.<br>Suite 602<br>Chicago, IL 60612 | 13-55118 | US Mail | |
| Noah Katsell | 13-55118 | Email | Active |

| | | | |
|---|---|---|---|
| DLA PIPER LLP (US)<br>Suite 1700<br>401 B Street<br>San Diego, CA 92101-4297<br>Email: noah.katsell@dlapiper.com | | | |
| Stellman Keehnel<br>DLA PIPER US, LLP<br>Suite 7000<br>701 Fifth Avenue<br>Seattle, WA 98104-7044<br>Email: stellman.keehnel@dlapiper.com | 13-55118 | Email | Active |
| Charles LaDuca<br>CUNEO GILBERT & LADUCA, LLP<br>507 "C" St. NE<br>Washington, DC 20002<br>Email: charlesl@cuneolaw.com | 13-55118 | Email | Active |
| Anthony Darrell Lehman<br>DLA Piper LLP (US)<br>Suite 2800<br>1201 West Peachtree St.<br>Atlanta, GA 30309<br>Email: anthony.lehman@dlapiper.com | 13-55118 | Email | Active |
| David Christian Lundsgaard<br>GRAHAM & DUNN, PC<br>Suite 300<br>2801 Alaskan Way<br>Seattle, WA 98121<br>Email: dlundsgaard@grahamdunn.com | 13-55118 | Email | Active |
| Michael Andrew McShane<br>Audet & Partners, LLP<br><br>221 Main Street<br>Suite 1460<br>San Francisco, CA 94105<br>Email: mmcshane@audetlaw.com | 13-55118 | Email | Active |
| Thomas R. Merrick<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>Suite 1900<br>655 West Broadway<br>San Diego, CA 92101-8498<br>Email: tmerrick@rgrdlaw.com | 13-55118 | Email | Active |
| Sara Z. Moghadam<br>DLA Piper LLP<br>500 Eigth Street, NW<br>Washington, DC 20004 | 13-55118 | US Mail | |
| Jason Moore<br>Van Eyk & Moore, PLLC<br>1424 4th Ave<br>Suite 528<br>Seattle, WA 98101 | 13-55118 | US Mail | |
| Derek Alan Newman<br>Newman | Du Wors LLP<br>Suite 1600<br>1201 Third Avenue | 13-55118 | Email | Active |

| | | | |
|---|---|---|---|
| Seattle, WA 98101<br>Email: derek@newmanlaw.com | | | |
| Julio Joaquin Ramos Jr.<br>Law Offices of Julio Ramos<br>35 Grove Street Suite 107<br>San Francisco, CA 94102<br>Email: ramosfortrustee@yahoo.com | 13-55118 | Email | Active |
| Joseph Anton Roselius<br>DLA PIPER US, LLP<br>Suite 1900<br>203 N. LaSalle St.<br>Chicago, IL 60601<br>Email: joseph.roselius@dlapiper.com | 13-55118 | Email | Active |
| Elaine A. Ryan<br>Bonnett Fairbourn Friedman & Balint PC<br>2325 E. Camelback Road<br>Suite 300<br>Phoenix, AZ 85016<br>Email: eryan@bffb.com | 13-55118 | Email | Active |
| Charles E. Schaffer<br>Levin Fishbein Sedran & Berman<br>510 Walnut St.<br>Suite 500<br>Philadelphia, PA 19106<br>Email: Cschaffer@lfsblaw.com | 13-55118 | Email | Active |
| Myles Schneider<br>Myles A. Schneider & Associates LTD<br>710 Dodge Ave. NW<br>Suite A<br>Elk River, MN 55330<br>Email: myles@maschneider.com | 13-55118 | Email | Active |
| John J. Stoia Jr.<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>Suite 1900<br>655 West Broadway<br>San Diego, CA 92101-8498<br>Email: johns@rgrdlaw.com | 13-55118 | Email | Active |
| Brian R. Strange<br>Strange & Carpenter<br>Suite 1900<br>12100 Wilshire Boulevard<br>Los Angeles, CA 90025<br>Email: lacounsel@earthlink.net | 13-55118 | Email | Active |
| Stephen A. Swedlow<br>Korein Tillery LLC<br>205 N. Michigan Ave.<br>Suite 1940<br>Chicago, IL 60601 | 13-55118 | US Mail | |
| Patricia N. Syverson<br>Bonnett Fairbourn Friedman & Balint PC<br>2325 E. Camelback Road<br>Suite 300<br>Phoenix, AZ 85016 | 13-55118 | Email | Active |

| | | | |
|---|---|---|---|
| Phoenix, AL 85016<br>Email: psyverson@bffb.com | | | |
| James M. Terrell<br>McCallum, Methvin & Terrell, P.C.<br>2201 Arlington Avenue South<br>Birmingham, AL 35205<br>Email: jterrell@mmlaw.net | 13-55118 | Email | Active |
| Reginald Terrell<br>The Terrell Law Group<br>P.O. Box 13315<br>PMB 148<br>Oakland, CA 94661<br>Email: reggiet2@aol.com | 13-55118 | Email | Active |
| Brendan S. Thompson<br>Cuneo Gilbert & LaDuca, LLP<br>507 C Street, NE<br>Washington, DC 20002<br>Email: brendant@cuneolaw.com | 13-55118 | Email | Active |
| Edward Colin Thompson<br>DLA Piper LLP (US)<br>100 North Tampa St.<br>Suite 2200<br>Tampa, FL 33602 | 13-55118 | US Mail | |
| Phong L. Tran<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>Suite 1900<br>655 West Broadway<br>San Diego, CA 92101-8498<br>Email: ptran@rgrdlaw.com | 13-55118 | Email | Active |
| Shaun Van Eyk<br>Van Eyk & Moore, PLLC<br>1424 4th Ave<br>Suite 528<br>Seattle, WA 98101<br>Email: shaun@vaneyk-moore.com | 13-55118 | Email | Active |
| Shawn J. Wanta<br>Baillon Thome Jozwiak & Wanta LLP<br>222 South Ninth St.<br>Suite 2955<br>Minneapolis, MN 55402<br>Email: sjwanta@baillonthome.com | 13-55118 | Email | Active |
| Shirli Fabbri Weiss<br>DLA PIPER LLP (US)<br>Suite 1700<br>401 B Street<br>San Diego, CA 92101-4297<br>Email: shirli.weiss@dlapiper.com | 13-55118 | Email | Active |
| Nathan Wersal<br>Class Justice Institute PLLC<br>Suite 212-313<br>40 S. 7th Street<br>Minneapolis, MN 55402<br>Email: nawersal@classjustice.org | 13-55118 | Email | Active |

| | | | |
|---|---|---|---|
| Marc Aaron Wites<br>Wites & Kapetan PA<br>440 N. Federal Highway<br>Lighthouse Ppont, FL 33064 | 13-55118 | US Mail | |
| Christopher Young<br>DLA PIPER LLP (US)<br>401 B Street<br>San Diego, CA 92101-4297<br>Email: christopher.young@dlapiper.com | 13-55118 | Email | Active |